# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Herbert F. Madara,                             :
                          Petitioner           :
                                               :
            v.                                 :    No. 415 C.D. 2018
                                               :    Submitted:  November 9, 2018
Department of Human Services,                  :
                          Respondent           :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                         FILED:  February 7, 2019


Herbert F. Madara (Madara), proceeding pro se, petitions for review of a February 22, 2018 Order (Reconsideration Order) of the Secretary of Human Services (Secretary) denying Madara's request for reconsideration of the Department of Human Services (DHS), Bureau of Hearings and Appeals' (Bureau) January 26, 2018 final administrative action order (Final Order).  The Final Order affirmed an administrative law judge's (ALJ) decision denying Madara's appeal related to the calculation of his Supplemental Nutrition Assistance Program (SNAP) benefits.  Upon review, we affirm.

On September 11, 2017, Madara received a notice from the Montgomery County Assistance Office (CAO) informing him that based upon a change in his

income,[1] his monthly SNAP benefits were increasing from $107.00 per month to $109.00. (Record (R.) Item 2.) Madara filed a timely appeal challenging the amount of SNAP benefits, asserting they should be higher, and an administrative fair hearing was conducted by telephone on January 11, 2018, before an ALJ for the Bureau.

At the hearing, an income maintenance worker testified as follows regarding the calculation of Madara's SNAP benefits. Madara's gross income is $871.00. A standard deduction in the amount of $160.00 is subtracted from this figure to equal $711.00. This subtotal is then divided in half, totaling $355.50, which is then subtracted from Madara's total shelter cost, which is $793.00.[2] The resulting $437.50 represents Madara's excess shelter expense, which is then deducted from the $711.00 income subtotal to yield $273.50 in net income. Based upon this income, Madara would be entitled to $109.00 per month in SNAP benefits. (R. Item 7, Hr'g Tr. at 11-12.)

Madara did not dispute the amount of his gross income, standard deduction, or total shelter costs. What he did dispute was the calculation of the excess shelter deduction. Madara testified that because he is considered elderly and disabled, he is entitled to deduct the total amount of his shelter costs, $793.00. According to Madara, this would reduce his net income to $0.00 and entitle him to greater SNAP benefits. (*Id.* at 18, 21-25.) In support of his calculation, he pointed to a February 6, 2017 Order by this Court remanding his appeal of a SNAP benefit decision from

[1] The change in income was attributable to an increase in the permitted deductions, which resulted in a decrease in Madara's net income. (ALJ Adjudication at 8.)
[2] The total shelter cost is calculated by adding Madara's monthly rent, which is $213.00, to the standard utility deduction, which is $580.00.

Philadelphia County (Remand Order)[3] and the subsequent decision by another ALJ in the other case, which appeared to deduct the total amount of his shelter costs from his income.

The ALJ in the present case denied Madara's appeal, stating that Madara was "misinterpreting the[] regulations" and "equating **total** shelter expense with **excess** shelter expense." (ALJ Adjudication at 9 (emphasis in original).) The ALJ explained that the regulations permit the deduction of excess shelter expenses "exceeding 50 percent of the net income" for the household, not the full amount, as Madara contends. (*Id.* (emphasis omitted).) The ALJ found that the CAO's calculation was in accordance with the applicable regulations. As for Madara's argument that Philadelphia County correctly calculated his benefits, the ALJ noted she "is not bound by nor does [she] have jurisdiction over any prior adjudication or prior incorrect calculation." (*Id.*) Based upon the testimony and applicable law, the ALJ denied Madara's appeal.

The Final Order issued January 26, 2018, affirmed the decision of the ALJ. The Final Order further provided that either party could seek reconsideration by the Secretary within 15 days or file an appeal with this Court within 30 days. The Final Order explained that filing for reconsideration "does not stop the time within which an appeal must be filed to Commonwealth Court." (R. Item 4, Final Order.) Madara filed a timely application for reconsideration, claiming the ALJ erred in

---

[3] *Madara v. Dep't of Human Servs.* (Pa. Cmwlth., No. 2695 C.D. 2015, filed Feb. 6, 2017) (*Madara I*). As an unreported panel decision of this Court, Madara may cite this opinion "for its persuasive value, but not as binding precedent," pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a). The remand in that matter was the result of the Court finding that the appeal and fair hearing procedures were not followed. *Madara I*, slip op. at 3-4. We did not reach the merits of whether Madara's benefits were properly calculated.

calculating his excess shelter deduction. Importantly, Madara did not file an appeal from the January 26, 2018 Final Order with this Court.

On February 22, 2018, the Secretary issued the Reconsideration Order denying Madara's request for reconsideration "for the reasons stated" in the Bureau's Final Order. (R. Item 6, Reconsideration Order.) The Reconsideration Order stated that "Madara may take issue with this Order Denying Reconsideration by appealing to the Commonwealth Court of Pennsylvania within thirty (30) days from the date of this Order." (*Id.* (emphasis omitted).) Madara filed his Petition for Review on March 23, 2018.

In his Petition for Review and supporting brief, Madara once again contests the calculation of his SNAP benefits, specifically the calculation of his excess shelter deduction. Madara argues that the regulations do not apply to him because he is elderly, disabled, and categorically eligible since his income is less than 200 percent of the poverty level. Accordingly, Madara asserts that he was entitled to a full deduction of his total shelter costs, which would have reduced his net monthly income to $0.00 and entitled him to a full allotment of $194.00 in SNAP benefits for a one-person household. He further claims the ALJs in the Philadelphia case and this case from Montgomery County made conflicting decisions, which should be consistent. He seeks reversal of the Final Order and retroactive reinstatement of his benefits at the full allotment from November 2016 to present.

The Department argues Madara timely appealed the Reconsideration Order but not the Final Order; as a result, our review is limited to the Reconsideration Order. Because Madara does not assert any basis upon which the Secretary abused her discretion in denying reconsideration, the Department claims Madara waived this argument. Even if the Court were to consider the merits, it asserts the

4

Secretary was correct in her determination because Madara's SNAP benefits were properly calculated. Like the ALJ, the Department contends Madara is confusing total shelter costs with the excess shelter deduction, which are separate and distinct.

Before we can reach the issue of whether the calculation was correct, we must first address the issue of which order is properly before us.[4] Madara's Petition for Review identifies the Reconsideration Order as the order he is challenging, although his arguments focus on the merits of the Final Order. Madara, though, did not file an appeal of the Final Order within 30 days, which rendered it final. Instead he sought reconsideration with the Secretary, who denied the request. While Madara did timely appeal the Reconsideration Order, that does not preserve Madara's ability to challenge the merits of the Final Order.[5] The filing of a reconsideration petition does not extend the 30-day appeal period to appeal the merits decision. *Modzelewski v. Dep't of Pub. Welfare*, 531 A.2d 585, 587 (Pa. Cmwlth. 1987).

The scope of review of an order denying reconsideration is limited to determining whether the Secretary abused her discretion, and not the merits of the decision. *K.G. v. Dep't of Human Servs.*, 187 A.3d 276, 279 (Pa. Cmwlth. 2018); *Keith v. Dep't of Pub. Welfare*, 551 A.2d 333, 336 (Pa. Cmwlth. 1988); *Modzelewski*, 531 A.2d at 587. Because Madara sought review of only the

---

[4] On April 10, 2018, the Court issued an order directing the parties to address the timeliness of the Petition for Review in their principal briefs on the merits. The Department did so, but Madara did not.

[5] Madara could have filed for reconsideration with the Secretary within 15 days **and** still have filed his Petition for Review with this Court of the Final Order within 30 days, which would have preserved his appeal of the merits. *Keith v. Dep't of Pub. Welfare*, 551 A.2d 333, 335 (Pa. Cmwlth. 1988).

5

Reconsideration Order, our scope of review is, therefore, limited to determining whether the Secretary abused her discretion when she denied Madara's request for reconsideration. "An abuse of discretion will only be found where the evidence shows there was fraud, bad faith, capricious action or abuse of power." *K.G.*, 187 A.3d at 279.

Madara does not address how the Secretary abused her discretion aside from reasserting that the calculation of his excess shelter deduction was incorrect, which affects his net monthly income and the amount of SNAP benefits he receives. This, however, goes to the merits of the Final Order, which was not appealed. Because Madara does not address how the Secretary's Reconsideration Order involved fraud, bad faith, capricious action, or an abuse of power, any challenge to the validity of the Reconsideration Order is waived. *Id.*

Even if we were to consider Madara's arguments as alleging an abuse of discretion by the Secretary, he would not prevail on his claim because, contrary to Madara's assertions, the calculations were in accordance with the applicable regulations. According to the regulations, a number of deductions are permitted from income, including, relevant here, the excess shelter deduction. The excess shelter deduction is defined as "[m]onthly shelter expenses **in excess of 50 percent of the household's income after all other deductions** . . . have been allowed." 7 C.F.R. § 273.9(d)(6)(ii) (emphasis added). The regulation further provides, "[i]f the household does not contain an elderly or disabled member, . . . the shelter deduction cannot exceed the maximum shelter deduction limit established for the area." *Id.* Madara points to this language as supporting his claim that he is entitled to a deduction of the full amount of his monthly shelter expenses without regard to any imposed limit. However, this language does not mean that Madara is entitled

6

to a deduction of his **full shelter costs**; it means if his calculated excess shelter deduction exceeds the established limit, which for the 2018 Fiscal Year was $535.00,[6] he shall be entitled to the full amount of the **excess shelter deduction**. *See* 7 C.F.R. § 273.10(d)(7) ("Households which contain a member who is a disabled [supplemental security income (SSI)] recipient . . . or households which contain a member who is a recipient of SSI benefits and the household is determined . . . to be categorically eligible . . . shall be entitled to . . . the uncapped excess shelter expense deduction . . . ."). It is still necessary to calculate Madara's excess shelter deduction in accordance with the regulations to determine which figure to use. The regulations direct the CAO to:

> (H) Total the allowable shelter expenses to determine shelter costs . . . . **Subtract from total shelter costs 50 percent of the household's monthly income** after all the above deductions have been subtracted. **The remaining amount, if any, is the excess shelter cost** . . . .
>
> (I) Subtract the excess shelter cost up to the maximum amount allowed for the area (unless the household is entitled to the full amount of its excess shelter expenses) from the household's monthly income after all other applicable deductions. **Households not subject to the capped shelter expense shall have the full amount exceeding 50 percent of their net income subtracted.** The household's net monthly income has been determined.

7 C.F.R. § 273.10(e)(1)(i)(H), (I) (emphasis added).

That is what was done here. The ALJ, in her Adjudication, calculated Madara's excess shelter deduction and net monthly income as follows:

---

[6] United States Department of Agriculture, FY 2018 Allotments and Deduction Information, available at https://fns-prod.azureedge.net/sites/default/files/snap/FY18-Maximum-Allotments-Deductions.pdf (last visited Feb. 1, 2019).

<u>Excess Shelter Deduction Computation</u>

$ 213.00 Rent
$ <u>580.00</u> Heating Standard Utility Allowance
$ 793.00 Total Shelter Costs
- 356.00 50% of Income Subtotal ($711 divided by 2=$355.5 rounded[7])
$ 437.00 Excess Shelter Deduction

<u>SNAP Computation and Deductions</u>
$ 871.00 Total gross monthly income
- 160.00 Standard Deduction
[]$711.00 Income Subtotal
- 437.00 Excess Shelter Costs/Maximum Shelter Deduction
$ 274.00 Net SNAP Monthly Income

(ALJ Adjudication at 9.) Had Madara's calculated excess shelter deduction exceeded the limit amount, he would have been entitled to use the full amount of whatever the calculated amount was because he is disabled and elderly. He would not have been limited to the $535.00 limit, but instead would have used whatever the amount calculated according to the regulations equaled. However, because Madara's calculated excess shelter deduction ($437.00) was less than the limit ($535.00), the calculated excess shelter deduction is the proper figure to use, pursuant to the regulations. Accordingly, we discern no abuse of discretion by the Secretary in denying Madara's request to reconsider those calculations.

Finally, to the extent another ALJ deducted the full amount of Madara's shelter costs instead of the excess shelter deduction when calculating Madara's SNAP benefits in Philadelphia County, that decision has no impact on our determination here. The decision in Philadelphia County, following our remand, is

---

[7] Under the regulations, amounts ending in 50 through 99 are rounded up. 7 C.F.R. § 273.10(e)(1)(ii)(A).

8

a separate matter from the one before us. This case involves a new calculation of Madara's SNAP benefits based on different income and deductions. Our review is limited to the matter before us.

While sympathetic to Madara's situation, we are constrained by the law, which dictates that we affirm the Secretary's Reconsideration Order.

                                                 _____

**RENÉE COHN JUBELIRER,** Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Herbert F. Madara, :
                              Petitioner :
                                      :
                v. : No. 415 C.D. 2018
                                        :
Department of Human Services, :
                        Respondent :

## O R D E R

     **NOW**, February 7, 2019, the Order the Secretary of Human Services dated February 22, 2018, is **AFFIRMED.**

 

                                      _____

                                      **RENÉE COHN JUBELIRER,** Judge